(Decided May 5th, 1863.)

---

HORATIO L. WHITRIDGE AND THOMAS S. ALEXANDER, *vs.* JARED PARKHURST, JR.

SPECIFIC PERFORMANCE: PAROL EVIDENCE.—The complainants' bill alleged, that J. E. by his will devised the residue of his real and personal estate to his wife, E., for life, with remainder to her daughter, F., in fee; that after the death of the testator, F., in consideration of certain devises to her in a will executed by E., agreed to respect and give effect to the dispositions made by that will of her, (F's) property to said F. for life, and after her death to J. F. the son of said F., and then in remainder; but that F. had failed to carry out said agreement on her part, and that E. relying on the assurances of F., had failed to make any provision in her will for J. F., which she otherwise would have done. The bill prayed for a specific performance of said alleged agreement in favor of J. F.; HELD:

1st. The will itself being silent as to any such agreement, and it not appearing that any intended provision in favor of J. F., was defeated or omitted from the will, in consequence of any contract or agreement of F.; that, parol evidence going to show that the will of E. was made with the knowledge and assent of F., who declared her purpose of carrying out its provisions, does not establish a binding contract to charge the estate of F. with a trust in favor of J. F., which would deprive F. of the right of election to take under the will of J. E.

2nd. That the admission of parol evidence to establish such an agreement, would be in direct violation of the Statute of Frauds, unless of the clearest and most satisfactory kind, and unless the acts of part performance relied

upon to take the case without the operation of the Statute be clear and definite and refer exclusively to the alleged agreement.

ELECTION: EVIDENCE.—An election may be determined by matter *in pais*, as well as by matter of record, but it can only be by plain and unequivocal acts: it may be either *express* or *implied*, and in deciding what acts of acceptance or acquiescence amount to an implied election, Courts must determine more upon the circumstances of each particular case than upon any general principle.

To constitute an election, there must be a choosing between two or more rights or estates, the taking of the one and the rejection of the other or others.

Where the question is, whether a party holds by election under one or the other of two wills of different testators, the receiving the rents and profits of the estates devised by one will is not sufficient evidence of an election to take under that will, when the same party at the same time has taken possession of the property devised by the other will.

Taking out letters testamentary in such case under one of said wills, is not of itself evidence of an election to take under that will.

APPEAL from the Circuit Court for Baltimore County sitting in Equity :

This appeal is taken from an order of the Circuit Court for Baltimore County sitting in equity, and passed on the 31st October 1860; whereby the injunction granted on the bill of complaint is continued until final hearing.

The complainant below, (who is the appellee here,) by his bill of complaint states, that he is a creditor of Elizabeth Frisby, deceased, on promissory notes of which copies are exhibited with the bill; that James Edwards by his will, dated 2nd July 1811, devised the residue of his real and personal estates to his wife Elizabeth Edwards, for life, with remainder to Elizabeth Brown, the daughter of his said wife, in fee; that at the time of making this will and at time of his death, the testator was seized and possessed amongst other of a parcel of land in Baltimore County, known by the name of "Oxford and Mount Pleasant," and also of lots lying at the north-east corner of Gay and Front streets, in the City of Baltimore.

That after the death of the testator, Elizabeth Edwards entered into possession of the said property, and held the

same under said will until her death. That Elizabeth Brown intermarried with Richard Frisby, who died in the year 1844, leaving his wife surviving him; and that Elizabeth Edwards died in the year 1846, leaving the said Elizabeth Frisby her only child and heir at law.

That Elizabeth Edwards left a last will, by which she devised to her daughter Elizabeth Frisby, for life, all her estate; and also undertook and attempted to devise the above property, in which she had no more than a life estate, to her said daughter for life, and after her death, to her son John J. Frisby, and then in remainder. That after the death of Elizabeth Edwards, the said Elizabeth Frisby, the executrix named therein, proved the same and obtained administration on the estate of the deceased; and that "she took possession of all the property devised to her for life, by the will of the said Mrs. Edwards, and held the same until her death; and that the property so devised to the said Elizabeth Frisby, by the will of the said Elizabeth Edwards, and of which she, the said Elizabeth Frisby, so took possession, did include as part of it certain property, to which the said Elizabeth Edwards was entitled in her own right and absolutely, and to which the said Elizabeth Frisby, as her only child and heir at law, would have been or was entitled in fee or absolutely, but for the said devise in the said Elizabeth Edwards' will."

That the said Elizabeth Frisby was entitled as devisee, in fee of the said James Edwards, to all the property of which she so took possession after the decease of her said mother, except that which the said Elizabeth Edwards was entitled to in her own right; and that she was entitled to all the last mentioned property "during her life as heir at law to her mother, if the devises of the same to her by her said mother's will became insufficient from her not accepting the same under said devises, or from any other cause."

That the said will was incompetent to affect the title of the said Elizabeth Frisby, to "Oxford and Mount Pleasant," and lot No. 17; unless the said will imposed on her

an election either to renounce in whole or in part, the devises to her by the said will, or to abide by the devises of "Oxford and Mount Pleasant," and lot No. 17, as made by the will; and unless she did with a full knowledge of her rights in said property, make her election to abide by the devises of said property by said will.

That no such election was ever expressly made by the said Elizabeth Frisby during her life time, except so far as the same may be made by her last will and testament; and that the only acts done by her during her life, from which an election to abandon and renounce her title to "Oxford and Mount Pleasant" and lot No. 17, could be alleged to be implied or established, was her taking out letters of administration as before stated, and taking possession of the property so devised to her by her mother, and enjoying possession thereof during her life.

That after the said Elizabeth Frisby had become indebted to complainant and to others, in a very large amount, and whilst so indebted, on the 19th January 1852, she made her last will, and thereby did undertake to make or set up or establish by her admission her election, as to the devises of said property, and thereby to surrender her title in fee to said property, and to accept in lieu thereof a life estate thereof as devised by her mother. That at the time of making her said last will, she was incompetent to make an election to the prejudice of her then existing creditors, or she thereby left herself with the means or ability of paying her debts, and that said last will "was therefore in law a fraud upon your orator and others, her then creditors."

That the said Elizabeth Frisby with John J. Frisby, on the 3rd September 1847, mortgaged "Oxford and Mount Pleasant," and lot No. 17, with other properties to the Savings bank of Baltimore, to secure payment of the sum of $25,000, and interest; and on the 22nd April 1857, the said Elizabeth Frisby made one other mortgage of said premises to William D. Miller, to secure payment of the sum of $12,000 and interest. And that on the 14th July 1857,

the said John J. Frisby conveyed "Oxford and Mount Pleasant" and lot No. 17, to John T. West, who subsequently conveyed the same to the appellants, Whitridge and Alexander, who now claim said premises under said deed, and certain other confirmatory deeds stated in the proceedings; and that on the 20th March 1852, John J. Frisby conveyed all his property to William George Krebs, in trust for payment of his debts; it charges, that judgments have been recovered against the said Elizabeth Frisby, by certain of her creditors, and that the creditors of the said John J. Frisby, and the said Krebs claim that said deed to West is fraudulent, or if not fraudulent was intended simply as a mortgage; and that the said John J. Frisby had an estate in said premises liable to execution by his creditors, and liable to be sold by said Krebs as trustee.

The bill then suggests the embarrassments which these conflicting claims have thrown around the title of the property, and prays that the same may be decreed to be the property of Elizabeth Frisby, and liable to payment of her debts and be sold for that purpose, and that an injunction may issue to prevent the Savings bank, Miller, Whitridge Alexander and Krebs, and the judgment creditors from making sale of said property and for general relief.

The wills of James Edwards, Elizabeth Edwards and Elizabeth Frisby, were filed as exhibits with the bill.

This last will recites, that Elizabeth Edwards at the time of making her last will, was the absolute owner of a large and valuable real and personal estate, in the City of Baltimore and Kent County, and was also possessed of a large estate which James Edwards had devised and bequeathed to her for life, with "remainder to Mrs. Frisby;" and that she, Mrs. Frisby, well knew at the time of the making of the will of Mrs. Edwards, that she, (Mrs. Edwards,) intended and undertook thereby, to dispose of all the property she then had in her possession, and that she, (Mrs. Frisby,) had then cheerfully acquiesced in such proposed disposition of

the said property, and was still content and willing after her death, that such dispositions of property should avail in law and take effect according to her, (Mrs. Edwards') intention and desire, and that she, (Mrs. Frisby,) had elect-to take under her, (Mrs. Edwards') will, the devises and bequests therein and thereby given to her, and had thereby given effect to all the devises and bequests therein, and that her will was to be made in execution of the power and authority in that behalf vested in her, by the last will of her mother, and she then proceeds to limit and appoint and dispose of all the estate left by her mother, Mrs. Edwards, and all and any property which passed under the will of James Edwards, and in which she would have had the absolute ownership, but for her consent and election to give effect to the devises and bequest in her mother's will, "save as to the parts thereof devised and bequeathed by said Elizabeth Edwards to my son John J. Frisby."

An injunction was ordered as prayed by the bill.

The answers of Whitridge and Alexander were filed September 7th, 1851. As these defendants have no personal knowledge in regard to the circumstances which are associated with the supposed equity of the complainant, it will be sufficient to say, that they insist that Mrs. Edwards at the time of making her last will, was seized and possessed of valuable real and personal estate in her own right, which she devised and bequeathed to Mrs. Frisby for life, with remainder after (Mrs. Frisby's) death, to her, (Mrs. Frisby's) children, other than John J. Frisby; and having thus provided for those other children to the exclusion of John, out of property over which she had an absolute power of disposal, she provided for John by devising to him, after the death of his mother, "Oxford and Mount Pleasant," and lot No. 17. That this will was made by agreement between Mrs. Edwards and Mrs. Frisby, and that after the death of the former, the last named lady entered upon all the property which had belonged to her mother, intending and electing to take the same as given to her by her moth-

er, and to give effect in all its provisions to her said mother's will, and as evidence that such election had been made they rely on the recitals in Mrs. Frisby's will and the recitals contained in the two deeds from John J. Frisby and his wife and sisters to West, and aver that she abandoned possession of said premises to John, with intent that he should be recognized as owner thereof.

They deny that the refusal or neglect of Mrs. Frisby to make her election to abide by her mother's will, would have annulled that will, and insist that, on the contrary, such refusal would have operated as a forfeiture of all the interest proposed to be given to her as a compensation to John, and that in the absence of proof to the contrary, it ought to be assumed, that she had elected to take under her mother's will, and they deny the right of her creditors or others claiming under her, to question or avoid any election, actual or constructive, which she may have made to the prejudice of John J. Frisby or his creditors or assignees.

The defendants deny knowledge of the claims of complainant or other alleged creditors of Mrs. Frisby or John J. Frisby. They traverse other averments in the bill, which will become material to be proved at the final hearing. But for the purposes of the present appeal they say it must be assumed that there is *prima facie* evidence of indebtedness on the part of Mrs. Frisby, and of the insufficiency of her estate to discharge her debts.

A day having been appointed for the hearing of the motion of Whitridge and Alexander to dissolve the injunction, the complainants and the defendants agreed that an attested copy of the depositions taken in the cause of the *Savings Bank of Baltimore vs. Frisby & others*, depending on the equity side of the Superior Court of Baltimore, should be read as evidence on the part of the defendants.

The material deposition admitted by the said agreement is that of James B. Ricaud, who testified as follows:

That witness prepared the draft of Mrs. Edwards' will,

it was executed in 1844, at her country seat, "*Oxford.*" He was then on a visit at the house, and the execution of the will was the subject matter of conversation for a day or two before it was executed. Mrs. Edwards, Mrs. Frisby, Mr. Frisby and witness, and perhaps other members of the family were present at the dictation and writing and execution of the will, it was a matter of notoriety in the family.

Before the execution of the will Mrs. Frisby stated to witness, that the property, under the will of Mr. James Edwards, was left to her in fee, after the death of her mother, Mrs. Edwards; that her mother and she had talked over the disposition of the said estate, and that she was perfectly willing that her mother should execute a will, and which will she would carry out to the same extent as if her mother possessed the principal in the property. The will was dictated both by Mrs. Edwards and Mrs. Frisby, in the presence of each other. After it was concluded, Mrs. Edwards asked Mrs. Frisby if the disposition of the property thus made by said will was satisfactory to her, and in accordance with their mutual understanding, or if not she would then make it so? to which Mrs. Frisby replied, that it was satisfactory, and that she would carry out the said will; Mr. Frisby was present at the time, and to the best of witness' recollection all the family were present. It was a family arrangement. The will was then executed in the presence of witness and the other subscribing witnesses. The conversation to which he refers and the execution of the will, all took place at the same time, so as to make one transaction. The will of Mrs. Edwards, subsequently to its execution, both in her life time and after her death, was the subject of frequent conversation between Mrs. Frisby and witness. He cannot fix any particular date for such conversations, either as to month or year; but in all these conversations he is clear in his recollection that Mrs. Frisby expressed her determination to carry out and stand to the said will.

The Court below (PRICE, J.) by an order, passed 31st October 1860, continued the injunction until final hearing, and filed the following opinion:

"It is admitted, that this is a case for the application of the doctrine of *election*. And the only questions are: Whether Mrs. Frisby did or did not make her election? And what that election was? Whether to take under the will of James Edwards or under the will of her mother, Mrs. Edwards?

"On the side of the defendant it is insisted, that she elected to take under the will of her mother; and on the side of the complainant it is insisted, that she made no such election, but on the contrary did elect to take under the will of James Edwards.

"In *McElfresh vs. Schley*, 2 *Gill*, 202, the Court of Appeals state the principle of election to be: 'That no one shall be permitted to take under an instrument and defeat its provisions; or a person shall not claim an interest, under an instrument without giving full effect to that instrument as far as he can.' In *White's Eq. Ca.*, 65 *L. L.*, 258, note, the foundation of the doctrine of election is stated in these words: 'That he, who accepts a benefit under' an instrument, must adopt the whole of it, conforming with all its provisions and renouncing every right inconsistent with them.'

"It is certain that an election may be determined by matter *in pais* as well as by matter of record, but it can only be by plain and unequivocal acts, *White's Eq. Ca.*, 65, *L. L.*, 289. It may be either *express* or *implied*. Considerable difficulty often arises in deciding what acts of acceptance or acquiescence amount to an implied election. This question must be determined more upon the circumstances of each particular case, than upon any general principle, *Dillon* vs. *Parker*, 1 *Swans.*, 382, note; *White's Eq. Ca.*, 65, *L. L.*, 271, note. To constitute an election there must be a choosing between the two; the taking of the one and the rejection of the other. The taking *both* is no election,

*Marriott vs. Badger*, 5 *Md. Rep.*, 311; *Dillon vs. Parker*, 1 *Swans.*, 379; *Morgan vs. Morgan*, 4 *Ins. Eq.*, No. 613; *Padbury vs. Clark*, 2 *Mac. & Gord.*, 306. And, therefore, it seems to me, that where an implied election is relied on, the acts constituting such election should plainly and unequivocally show, not only that one was taken, but that the other was abandoned. Acts or declarations short of this do not show an actual election. They must be plainly inconsistent with any other reasonable theory, than that the one was taken and the other rejected. Acts of ownership over both properties cannot evidence an election, a choosing between the two, whether those acts of ownership are the taking possession of both, or the receiving of the rents of the one and the mortgaging or leasing of the other. Such and similar acts show that *both* were claimed, and therefore, that neither was abandoned; and that consequently, instead of showing clearly an election, which is the duty of the party to do, they negative it. It is clear, however, that there may be cases where certain acts of ownership over both properties would not negative the idea of an election, neither would they affirm it. They might be equivocal. As for instance in this particular case, the mere possession, or taking the rents of both properties by Mrs. Frisby, after the death of her mother, would not *negative* an election to take under the will of her mother, and against the will of James Edwards; because these acts would be perfectly consistent with her mother's will. But such acts, I apprehend, do not clearly and unequivocally show that she had renounced her rights under the will of James Edwards; because they are perfectly consistent with the hypothesis that she claimed under *both* wills. They do not clearly show that she had made a *choice* between the two; that she had taken the one and rejected the other. She would have acted precisely in the same manner if she had intended to take and claim *both* estates. I do not, therefore, think that the taking possession, and receiving the rents and profits of her mother's property,

by Mrs. Frisby, was sufficient evidence of an election, by her, to take under her mother's will; when she at the same time took possession of the property devised her by James Edwards. Neither can I think, that, because it was the moral duty of Mrs. Frisby to have made such an election, or because if she had not, 'she would have died faithless to her mother's memory and to her duty to her children,' that it therefore follows that she in fact made said election.

"It is very clear, I think, that the fact of Mrs. Frisby's taking out letters testamentary under the will of her mother, was not an election on her part to take under that will. *Dillon vs. Parker*, 1 *Swans.*, 382. *Taylor vs. Brown*, 2 *Leigh.*, 419. *McKim vs. Marriott*, 4 *Gill*, 72.

"It is insisted by the counsel for the defendants, that Judge Martin decided, expressly, in the case of the *Savings Bank vs. Frisby & others*, that the execution of the mortgage by Mrs. Frisby and her son, was an election by her to take under her mother's will, *as to "Oxford" and the lot on Gay and Front streets*. I do not so understand Judge Martin's opinion. He says: 'It (the mortgage) is a manifestation, that she considered herself at that time entitled to *all the property* embraced by the mortgage *in fee;* an act actually inconsistent with the hypothesis of an election.' And in another part of his opinion, he says: 'The fact that Mrs. Frisby united with her son, John J. Frisby, in the execution of this mortgage, cannot be considered an actual election, on her part, to relinquish her own estate, accompanied as it is by an act in which she asserts an absolute power of disposition over that estate.' Then follows the passage, relied on by the defendants' counsel to show, that Judge Martin thought that the mortgage was an election as to "Oxford" and the lot on Gay and Front streets, *although not as to the other property;* or, in other words, that there could be an election as to one *part* of an estate, and not as to the other part; that Mrs. Frisby could elect to take and did legally elect to take, a *portion* of the property under her'

mother's will, 'without giving *full* effect to that instru-ment,' 2 *Gill*, 202; that she could accept a benefit under that instrument *without 'adopting the whole* of it, or con-forming with *all* its provisions, and *renouncing every right,* inconsistent with them.' *White's Eq. Ca.*, 65, *L. L.*, 258, note. I do not think that Judge Martin could have so intended, for its seems to me that this would be strik-ing at the very foundation of the whole doctrine of elec-tion, and be entirely at variance with the passages of his opinion cited above.

"But Judge Martin does certainly carefully consider the effect of the conversations with Mr. Ricaud on the question of election, and does expressly decide, principally on the authority of the case of *English vs. English*, 2 *Green. Ch. Rep.*, 510, and the reasoning of the learned judge in that case, that these conversations did not constitute an actual election.

"It is not necessary for me to say what I should be dispos-ed to think of the effect of these declarations of Mrs. Frisby, followed by and accompanied with the act of taking pos-session and holding, *only* in accordance with her mother's will, and with no acts or declarations inconsistent with a claim only under that will. This case does not so stand. On the contrary, after some of these conversations, and probably about the time of others, to wit: on the 3d of Sep-tember 1847, the next year after the death of Mrs. Ed-wards, and after having had a reasonable time to ascertain the claims against the estate of her mother, and the value of her estate, and thus intelligibly to make her election, and therefore most likely the time when she would have made it, she executed with her son, a mortgage, in fee, of Oxford, and other property, (the fee in which was given her by the will of James Edwards, and a life estate only by the will of her mother,) to the Savings bank of Baltimore, to secure $25,000 lent to her, and in which mortgage it is declared that until default is made, 'she, *her heirs, devi-sees,* executors, administrators and assigns,' shall use and

enjoy the premises;—'an act,' Judge Martin says, and I think says truly, 'absolutely inconsistent with the hypothesis of an election,' or with her having made, at that time, an election to take a life estate and renounce her fee. Again, shortly after this, about a month, to wit: on the 19th October 1847, she executed a lease to John H. Hill, for ninety-nine years, renewable forever, of part of the property demised to her by James Edwards, *describing her estate in this property as being derived under the will of James Edwards, and by the death of Mrs. Edwards, the tenant for life,* reserving the rent to herself and her heirs with a right of re-entry for non-payment of rent, and covenanting for herself and *her heirs,* for a renewal at the end of the ninety-nine years, &c.;—another act, totally inconsistent with the hypothesis of her having made an election, to take a life estate and renounce her fee.   But again, about six or seven months thereafter, to wit: on the sixth of May 1848, she executed another lease, similar in all respects and of similar property, to John M. Muhlhofer.   And thus by her three solemn deeds, at three different times, to wit: in September 1847, in October 1847 and in May 1848, testifying clearly that she had not renounced her fee, and had not taken in lieu thereof, a life estate, under her mother's will, and thus contradicting by her solemn acts and deeds her conversations with Mr. Ricaud, if those conversation are held to mean that she had then actually elected to take a life estate under her mother's will, and had then actually renounced her fee under the will of James Edwards.

 ''I know that the counsel for the defendants contend, that the prior leases, made to these same parties, by Mrs. Edwards and Mrs. Frisby, for ninety-eight years, amounted to an entire revocation of the will of Mrs. Edwards, as to the property leased,' and that, therefore, the will imposed no duty of election as to this property.   I think the counsel for the complainant (Mr. Dobbin) is right, when he says: 'This is an error,' and that 'by the lease no change was made in Mrs. Edwards' estate, it was the same in quality as before,

and was only made subject to the term.' The reversion and the rent incident to it remained in Mrs. Edwards for life, and passed under the general terms of her will to Mrs. Frisby for life, in the same manner as did the other property of Mrs. Edwards, devised to her by James Edwards for life, and consequently imposed the same duty of election as to both.

"But I cannot agree with the same counsel when he contends, that these leases are conclusive evidences of an election by Mrs. Frisby against her mother's will; or, in other words, that they conclusively show (which they must, to be an election,) that she had not only determined to hold under the will of James Edwards, but had also renounced all claim under the will of her mother. The taking possession of her mother's property after her death, and the holding of the same at the very time of these leases, and the receiving the rents and profits thereof, by Mrs. Frisby, from the death of her mother to her own death, and the using of the same as her own, are contradictory of this. It seems to me that these circumstances, taken together, rather show that she claimed under both wills, than that she had renounced *either*.

"The only other evidence of an election by Mrs. Frisby, is her will, dated 19th January 1852. On this point, I have only to say, that it appears to me that she could not, at that time, legally make any such an election, because prejudicial to the rights of the complainant, and her other then existing creditors. If she could not then, because prejudicial to her creditors, *give* away her property to her children, or *sell* it to them for less than its fair value, *Bullitt vs. Worthington,* 3 *Md. Ch. Dec.,* 99; *Worthington vs. Bullitt,* 6 *Md. Rep.,* 172; I do not see how she can be permitted to do the same thing, either by an exchange or an election.

"In the above case of *Bullitt vs. Worthington,* a father was indebted and in embarrassed circumstances, and conveyed to his son land worth $20,000, for the money con-

sideration expressed in the deed, of $12,000; of which $5,000 was in fact paid, in money, by the son, and the Chancellor said: 'The fact that a part of the consideration of a deed, from a father to his son, was paid in money, though it gives to the deed, in legal contemplation, the character of a deed of bargain and sale, cannot preclude a Court of Equity from looking to the fact that the difference between the cash paid, and the value of the property conveyed, was in fact a gift, founded on the consideration of natural love and affection.' On appeal, the decision of the Chancellor was affirmed, 6 Md. Rep., 172. The Court of Appeals held: 'That this was a voluntary conveyance to the extent of the excess of the value of the land over $5,000 and was therefore void, as to creditors who were such prior to and at the date of the deed. Whether such a voluntary deed can be supported or not, depends on the condition of the grantor at its date; if he then had creditors who would be hindered or delayed in collecting their debts, though he were not in fact insolvent, still, so far as it is a voluntary conveyance, or resting on natural love and affection, it is void. Judge Mason concluded the opinion by saying: 'We have not said, nor do we design to intimate, that the deed in question was, in fact, fraudulent in its inception. We pronounce it void, because of the fact alone of its having been a voluntary conveyance, made at a time when the grantor was indebted, and that the indebtedness still exists.' And on this same principle, it seems to me, this election is void.''

The defendants, Whitridge and Alexander, appealed.

The cause was argued before Bowie, C. J., and Bartol and Goldsborough, J.

*Thos. S. Alexander*, for the appellants, contended:

1. That an act of election is nothing more than the exercise of an ordinary proprietary right, being the acceptance of pecuniary benefits rendered *in exchange* for equiva-

lent pecuniary interests abandoned, and is therefore not to be impeached by a creditor, (not a lien creditor,) except for *fraud* or for such gross inadequacy as will warrant the inference of fraudulent motive.

2. That the will of Mrs. Edwards was made to carry out an agreement between her and her daughter Mrs. Frisby, for settlement of their respective estates. And she devised to Mrs. Frisby a life estate in all her property in consideration of Mrs. Frisby's undertaking, that she would respect and give effect to the disposition which Mrs. Edwards' will made of her, (Mrs. Frisby's) property.

Mrs. Frisby derived valuable interests under that will during her life. But John J. Frisby was excluded from all share of the estate of Mrs. Edwards, because of the reliance placed by her in the assurances of Mrs. Frisby, that he should be compensated by the dispositions made of "Oxford, Mount Pleasant and lot No. 17" in his favor. After the death of Mrs. Edwards therefore, a Court of Equity would at the instance of John J. Frisby, have compelled Mrs. Frisby to execute specifically her agreement with the mother, and as it is now too late, to reinstate the parties in the positions they would have relatively occupied, but for the agreement, equity ought, (on the principle that what ought to have been done, should be treated as done,) to enforce the observance of the agreement, and especially ought to decline its assistance to any person claiming under Mrs. Frisby and seeking to disturb the possession or enjoyment of the property devised to John J. Frisby by his assigns for value.

3. That the declaration made by Mrs. Frisby to Mr. Ricaud so frequently, and recently after her mother's death, and at times when she must have been aware of her rights and of the values of the opposing interests are *per se* acts of election, and especially are they to be treated as such since they were made in fulfilment of the obligations which she had assumed to her mother in her life time.

These declarations are admissible in evidence as parcel

of the *res gestæ*, and as explanatory of the title under color of which she entered and held possession.

4. That the declarations contained in the will of Mrs. Frisby, amount to a solemn and conclusive election as *of the day of the making of the will.* There is no technical form of language or act required to constitute an election. Any act or declaration expressive of a determined purpose to declare the choice is in law *an election,* and will be respected and enforced as such. And an election thus made is altogether conclusive on the party.

The will is not relied on as a testamentary act in affirmance of the title of John J. Frisby to the premises in question. But as a declaration in writing solemnly and deliberately made, and the circumstances attending the execution of the will are relied on merely as evidence of solemnity and deliberation in the exercise of the choice, and the legal consequence would be the same, though the will had afterwards been revoked or cancelled. Hence, it is concluded as before stated, that the election takes effect as of the day of the making of the will.

These declarations are also relied on as sufficient proof that the election had been previously made, and as evidence confirmatory therefore of the parol evidence of Mr. Ricaud, and it will be contended that as a subsequent declaration in writing will sustain an antecedent agreement by parol founded in valuable consideration as against intervening general creditors, and a like subsequent declaration will establish a trust originally created by parol, so the recitals in Mrs. Frisby's will relate back to her declarations made before and after and cotemporaneously with her entry upon her mother's estate, and constitute an election made as of the date of such entry.

5. The plaintiff below is a simple contract creditor of Mrs. Frisby, and the injunction is to be supported only by showing that as a simple contract creditor, he is entitled to the relief sought. Other creditors may come in and participate in any decree which the plaintiff may show he is

entitled to. But the defendants are bound to make defence only against the case made by the bill.

In support of these views, the following authorities were relied on: *Mestaer vs. Gillespie*, 11 *Ves.*, 638. *Drakeford vs. Wilks*, 3 *Atk.*, 539. *Dufour vs. Pereira*, 1 *Dick.*, 419. *Chamberlaine vs. Chamberlaine*, 2 *Freem.*, 24. *Oldham vs. Litchfield*, *Ib.*, 284. *Sellac vs. Harris*, 2 *Eq. Ca. Ab.*, 46. *Browne vs. Browne*, 1 *H. & J.*, 430. *C. D. Owings' Case*, 1 *Bland*, 397. *Copis vs. Middleton*, 2 *Madd.*, 556. *Sherwood vs. Walker*, 6 *Beav.*, 401. *Dillon vs. Parker*, 1 *Swans.* (Argument) 369, 370, (Opinion) 378, 379, 380, 381, 382. *Same case*, 1 *Jacob*, 505; 5 *Cond. Eng. Ch. Rep.*, 239, and 1 *Clarke & Finnely*, 303, in the House of Lords. *Brice vs. Brice*, 2 *Molloy* 21; 12 *Cond. Eng. Ch. Rep. Butricke vs. Broadhurst*, 1 *Ves.*, *Jr.*, 171. *Wake vs. Wake*, 1 *Ves.*, *Jr.*, 335. *Stratford vs. Powell*, 1 *Ball & Beatty*, 11, 23. *Albert vs. Winn*, 5 *Md. Rep.*, 73, 74.

*G. W. Dobbin* and *J. Mason Campbell*, for the appellees, contended :

I. That Elizabeth Frisby did not elect to take a life estate under the will of Elizabeth Edwards, and so continued owner of the fee under the will of James Edwards.

II. That she could not validly elect to dispossess herself of the fee to the prejudice of her creditors.

Upon the first point it was argued that the affirmative should be proved by the appellant, who must establish by evidence the fact that Elizabeth Frisby chose the life estate and renounced the fee. The presumption of fact is against her having done so, and even if it be shown that a party takes or claims both estates that will not amount to an election. *Marriott vs. Badger*, 5 *Md. Rep.*, 311. *Dillon vs. Parker*, 1 *Swans.*, 379. *Morgan vs. Morgan*, 4 *Irish Eq. N. S.*, 613. *Padbury vs. Clark*, 2 *Macnaghten & Gordon*, 306.

What then is relied on to show that Elizabeth Frisby

abandoned her fee under Elizabeth Edwards' will to take a life estate under the will of James Edwards?

(*a.*) Elizabeth Frisby was appointed executrix of and took out letters on Elizabeth Edwards' will, but it is settled in England as well as at home, that this is no election to take under the will. *Dillon vs. Parker,* 1 *Swans.,* 359; *Jacob,* 505; 1 *Clark & Finnely,* 303. *Taylor vs. Brown,* 2 *Leigh.,* 419. *McKim & Marriott vs. Duncan,* 4 *Gill,* 72.

(*b.*) Elizabeth Frisby united with her son John J., in a mortgage of "Oxford" and lot No. 17, to the Savings bank, on the 3rd September 1847. The assumption is, that she conceded thereby her son's title under Elizabeth Edwards' will, and by consequence narrowed her fee to what she took under that will. But nowhere does that instrument describe her as tenant for life, nor her son as remainder-man, and no doubt as the amount loaned was a large one, and Elizabeth Edwards' will being on record, which undertook to give an interest in the mortgage property to her son, the bank out of abundant caution insisted on the deed's conveying his apparent title to prevent any question about it. It will also be seen upon the face of the deed, that until default, its terms reserved the enjoyment of the property not to him, but to her, her heirs, devisees, executors, administrators or assigns. A conveyance by her in fee for a specified purpose with a proviso recognizing her right to the fee, if not required for such purpose, can hardly be considered an abandonment of her estate in fee. Another clause in the same deed, and on the same page, bears testimony to the like recognition in the instrument of her fee-simple title.

(*c.*) Certain statements made by Elizabeth Frisby to Ricaud, are relied upon by the appellants. The date of the conversations, and the conversations themselves, are not given. At most the statements so put forward only go to show, *not* that she had elected, but *intended* to elect, and therefore are of no avail. *English vs. English,* 2 *Green,* 510.

(*d.*) Lastly, Elizabeth Frisby's will dated the 19th January 1852, is supposed to establish the asserted election.

This will recites that she had elected, but that declaration is unaccompanied by any reference to show when she had elected. If it avail at all, therefore, it can only avail from the time the instrument became of force. This was not until her death at the close of 1853, or the beginning of 1854. It was necessarily of no force in her life time, and no case has established that the right to elect can be exercised except in the life time of the party electing.

A further objection to this will's operating as an election will be stated under the second point.

None of these things establish the fact which the appellants are bound affirmatively to show. On the other hand there is abundant evidence in the record to show that Elizabeth Frisby never intended to surrender her fee under the will of James Edwards. It will be found in certain documents which the authorities say are conclusive evidence upon this subject. G. W. D., No. 1, is a lease made by Elizabeth Edwards and Elizabeth Frisby to John H. Hill, on the 16th July 1845, of property devised by the same clause of the will of James Edwards, which carries the property now in controversy. It is there described as vesting under that will in Elizabeth Edwards for life, and then to inure to Elizabeth Frisby. After Elizabeth Edwards' death, to wit: on the 19th October 1847, a confirmatory lease was executed to Mr. Hill, G. W. D., No. 2. Elizabeth Edwards' will was then in force, and had been proved and recorded in the Orphans' Court, in December 1846. If Elizabeth Frisby intended to take and hold under her mother's will which gave her only a life estate with remainder in fee to her son John, his union with her in the lease for ninety-nine years was indispensible. He did not unite in the confirmatory lease, and it was executed by Elizabeth Frisby alone, *describing the lot as one to which she became entitled by virtue of James Edwards' will, and the death of Elizabeth Edwards, which determined*

11      v. 20.

*Elizabeth Edwards' life estate.* Nor is this an isolated case. G. W. D., No. 3, is another lease by Elizabeth Edwards and Elizabeth Frisby of property described as vesting in them under James Edwards' will in the same way as in Hill's lease.

A confirmatory lease under date of 6th May 1848, was executed by Elizabeth Frisby to Muhlhofer after the death of Elizabeth Edwards, G. W. D., No. 4, in which she describes the lot as held under the will of James Edwards, and not under the will of Elizabeth Edwards. The force of the statement in her will under date of 1852, that she had acquiesced in her mother's will, and so cut down her fee to a life estate may be estimated from these two solemn recorded acts of hers to the contrary, one in 1847, and one in 1848. If the election now insisted upon is to be held good, both these lessees must lose their terms, for if tenant for life, Elizabeth Frisby could not make leases for ninety-nine years renewable forever. Her solemn and deliberate assertion of a title in fee after the death of her mother, by instruments upon the faith of which other persons dealt with her, and which were spread upon the public records, must, if any thing can be so considered, be held conclusive evidence that with both wills before her, she deliberately elected to take under the will of James Edwards.

2. Under the second point it is submitted that Elizabeth Frisby could not validly dispossess herself of her title in fee to the prejudice of her creditors.

The general principle, that a deed to hinder, delay or defraud creditors is void at the common law as well as by statute, cannot be disputed, and covers every case of the exercise of the *jus disponendi* fraudulently by a debtor. The doctrine of election never was meant to narrow or shackle the operation of this principle. Elizabeth Frisby contracted debts to the complainant, now appellee, and others, to a large amount. The effect of the election set up by the appellants is to strip her creditors of the property which she owned at the time they became such. No matter

whether her will or her statements to Ricaud are put for-
ward as evidence of her election, the objection applies
equally to both. She attempts to exercise her right of elec-
tion to the prejudice of others.   Where all things remain
the same, it may be conceded that the right of election is
undisturbed, but if third parties are to suffer from its ex-
ercise, disclosed only by private conversations or kept
secret till her death, equity will not tolerate such an
abuse.   *Brice vs. Brice*, 2 *Molloy*, 21.

*Reverdy Johnson* for the appellants in reply :

1st. Apart from the question of election, the property in
dispute was bound by an agreement which exempted it
from all obligation to the creditors of Mrs. Frisby.

2nd. But if such agreement is not established in law or
fact, still the title is in John J. Frisby, by an election
made by Mrs. Frisby.

Arguing the 2nd proposition first, Mr. Johnson contend-
ed, that if the witness testifying in reference to the mat-
ter of election told the truth and was not mistaken as to
the facts, it was the purpose of Mrs. Frisby to surrender
her fee in this property; in consideration that she was to
take the *other property* under the will.   Mrs. Frisby her-
self in part dictated the will of Mrs. Edwards, and Mrs.
Edwards assented to it in all respects, and after the will
was made, she said over and over again, it was her pur-
pose to *carry out that will*. Mrs. Frisby was bound in honor ·
and conscience as an honest woman to make the election
as she did.   Taking possession of the whole property de-
vised by the will was evidence of an election.   *White &
Tudor's Lead. Ca.*, 382, 400, 402, 384.

How do the mortgages or either of them contradict the
election or revoke it, even if she had the authority to do
so? The will of Mrs. Edwards gave John an interest in the
property.   Mrs. Edwards' will gave it to John, but she
had no right to do this, save and except that the will gave
also a large estate to Mrs. Frisby, which if she took ren-

dered the devise to John operative, John unites in the
mortgage, and for no other reason than that the property
was to be his at the death of Mrs. Frisby. No other sensi-
ble reason can be given for his uniting in the deed. The
use of the word "heirs" has reference to other property
contained in the mortgage, and applies to that and not to
the particular property in question. The word "assigns"
was properly used, as a life interest is assignable. The
fact that both joined in this mortgage is the controlling
fact in the case to show an election. The same thing is true
of the subsequent mortgage to Miller. The deed from
Frisby and West, also shows than an election was made.

On his first proposition Mr. Johnson contended, that if
this is not a case of election, or if no election was made,
there are other principles on which the relief should be
refused. There was a contract made by parties competent
o contract and for a valuable consideration, that this prop-
rty should be the property of John in fee. Inadequacy
of price to set aside such a contract, must be so gross as to
amount to fraud. *Matthews vs. Feaver,* 1 *Cox,* 383, quoted
in *Copis vs. Middleton,* 2 *Madd. Ch. Rep.,* 567. This con-
tract was binding when made and from the period it was
made. *Colegate, D., Owens' Case,* 1 *Bland,* 397. *Hollis
vs. Hollis,* 1 *Md. Ch. Dec.,* 479.

BARTOL, J., delivered the opinion of this Court:

After a most careful consideration of the proceedings in
this case, and of the authorities cited in the argument, a
majority of this Court are of opinion that the order of the
Circuit Court continuing the injunction, ought to be af-
firmed.

In the argument of the cause in this Court, the solici-
tors for the appellants pressed with much earnestness and
ability the second point in their brief, which alleges that
there was a contract or agreement between Mrs. Edwards
and Mrs. Frisby, whereby the latter agreed in considera-
tion of the devises made to her in the will of Mrs. Edwards,

to respect and give effect to the disposition made by the same will of her (Mrs. Frisby's) property.    It is alleged, that the will of Mrs. Edwards was made to carry out that agreement, and that relying on the assurances of Mrs. Frisby, the testatrix failed to make any provision in her will for John J. Frisby, which she would otherwise have done; and therefore it is contended, that this Court ought now to enforce that agreement in favour of John J. Frisby.

It is unnecessary for us to go into an examination of the cases in which such contracts, when clearly established by competent proof, have been enforced in equity; or to consider the effect of a performance of such contracts on the one part, in taking them out of the operation of the Statute of Frauds.  In this case the alleged contract is not proved.  The only evidence on which it rests is the testimony of Mr. Ricaud, who does not prove any such binding agreement as this Court can enforce.    His testimony shows that the will of Mrs. Edwards was made with the knowledge and assent of Mrs. Frisby, who declared her purpose of carrying out its provisions.    The will itself is silent as to any such agreement; nor does it appear, that any intended provision in favour of John J. Frisby was defeated, or omitted from the will in consequence of any contract or agreement of Mrs. Frisby.

It would be carrying the doctrine contended for farther than is warranted by any adjudged case, that we have seen, to say that the conversations testified to by Mr. Ricaud, constitute a binding contract to charge the estate of Mrs. Frisby with a trust in favour of John J. Frisby, which deprived her of the right of election.    It would be setting a dangerous precedent, and in direct violation of the plain provisions of the Statute of Frauds to admit parol evidence to establish such an agreement, unless it be of the clearest and most satisfactory kind, and also, unless "the acts of part performance relied upon to take the case without the operation of the Statute of Frauds, *be clear and definite, and*

*refer exclusively to the alleged agreement.''*    4 *Md. Rep.*,
462.

A majority of this Court are of opinion, that in this case
the alleged agreement has not been proved. It may be
remarked, that in the answer of the appellants, no such
agreement is alleged as binding upon Mrs. Frisby; but
they treat the case as one in which Mrs. Frisby, after the
death of her mother, Mrs. Edwards, had the right of elec-
tion, either to take under her will. or under the will of
James Edwards. On that ground the cause seems to have
been presented to the consideration of the Court below. In
the opinion of the Judge of the Circuit Court, he says: "It
is admitted that this is a case for the application of the
doctrine of election:"

A majority of this Court considered that the right of
election existed in Mrs. Frisby, and therefore the decision
of the present appeal must depend upon the principles gov-
erning that branch of the law; and upon the proof in the
record.

On this subject it is unnecessary for us to say more than
that we concur in the views expressed in the opinion of the
Judge of the Circuit Court, and upon the authorities cited
by him, and for the reasons he assigns the order appealed
from will be affirmed.

BOWIE, C. J., dissented, and filed the following opinion:

The learned Judge who decided this case below, consider-
ed it as a case of election merely. Contemplating it in that
aspect, his conclusions are very forcibly drawn from his
premises. In my judgment, it is not a case of that character
alone, one, in which it was optional with Mrs. Frisby at
the death of her mother or afterwards, to choose which of
two estates she would take; but a contract, between the
ancestor and heir, for the settlement of real estate in *futuro*,
owned in part by each, founded upon valuable and meri-
torious considerations; an agreement, the part perform-
ance of which by her will, devising a large share of her

estate over which she had absolute control, to the heir, with power to dispose of it among others, conferred on the ancestor, that devise being unrevoked, an equitable and legal right to dispose of the property of the heir, included in the same will, in favor of her grand-son as had been previously stipulated between them. It is one of that class of contracts to settle real estate by will, which has been long recognised as binding upon the consciences of the party and often enforced in equity. *Newland on Contracts*, 111. *Story's Equity Jur.*, sec. 785, 781. *Duford vs. Pareira*, 1 *Dick.*, 419. *Brown vs. Brown*, 1 *H. & J.*, 430. *Owens' Case*, 1 *Bland*, 399, 432. *Mundorf vs. Kilbourn*, 4 *Md. Rep.*, 459. *Johnson vs. Hubbell*, 2 *Stockn. Ch. Rep.*, 332 to 340.

Cases of election are those in which the act of the party electing, as the word imports, is a matter of volition, depending upon the principle "*qui sentit commodum, debit sentire et onus.*" "When a man takes upon him to devise what he had no power over, upon a supposition that his will will be acquiesced under, this Court compels the devisee if he will take advantage of the will, to take entirely but not partially under it, as was done in *Noys & Mordaunt's* case; there being a tacit condition annexed to all devises of this nature, that the devisee do not disturb the disposition which the divisor hath made." *Streatfield vs. Streatfield*, *Ld. Chr. Talbott.* 1 *Swans.*, 447, *Lead. Cases in Equity*, 288.

"A man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claim an interest under an instrument, he must give full effect to it as far as he is able to do so; he cannot take what is devised to him, and at the same time what is devised to another, although but for the will, it would be his; hence, he will be driven to his election to say which he will take." *Beall & McElfresh vs. Schley*, 2 *Gill*, 181.

These are cases of pure election, resulting from the principle announced in the foregoing citations, that one can-

not claim under and against an instrument at the same time. If the defendant's title rested upon this basis alone, it might be doubtful, because the acts of the devisee, on whom the duty of election devolved, seen only in this light, were ambiguous.

Where the obligation to elect or rather to acquiesce in the disposition made by the testator, results from promises oral or written, made upon valuable or meritorious consideration, the relation of the parties is materially, if not entirely, changed. The devisees are no longer voluntary as to each other, the promisor is bound to the promisee, or the *cestui que use*, and liable to all the remedies for relief applicable to the circumstances of the case. If the agreement is evidenced in writing, or rests in parol, accompanied by part performance, it becomes the subject of a bill for specific performance. And one who would be entitled to such relief, if complainant, cannot be divested of his equities, as defendant. Contracts founded upon an equitable duty, such as would be enforced by a Court of Equity, or upon a moral obligation, which no Court of law or equity could enforce, or to do that which an honest man ought to do, or upon the waiver of a legal right, by the party entitled to it, are maintained by a sufficient consideration. *State, use of Stevenson vs. Riegart*, 1 *Gill*, 1.

Promises by a grand-parent to a stranger, for the benefit of a grand-child, are binding upon the grand-sire. 4 *Md. Rep.*, 476, *Ellicott vs. Peterson.* Contracts between a parent and grand-parent, for the benefit of a grand-son, founded on valuable consideration, moving from the grandparent and enuring to the benefit of the parent and her other children, to the exclusion of the son, must be equally obligatory.

In equity what is agreed to be done, is considered as done. Having covenanted to abide by the will of her mother, and suffered her to die under that impression, the *"locus penitentiæ"* was gone. From the death of Mrs. Edwards, Mrs. Frisby's occupation was that of tenant for life

of "Oxford" and lot No. 17, with the reversion in her son John J. Frisby. She was no longer at liberty to choose; her contract obliged her to acquiesce in the disposition her mother had made, otherwise the injury was irreparable.

In cases of election, if the devisee on whom the duty of election devolves, renounces the will, and reclaims his property, the disappointed devisee has a right to compensation. *Noyes vs. Mordaunt, White's Equity Cases,* 282, 283.

What compensation could the grand-son have here? The grand-mother's estate was given to the mother for life, with a power of appointment among other children, to the exclusion of the son. Could the children entitled under this power be deprived of their provision, because of the fault of their mother, the tenant for life, if not, would the mother's life estate compensate the devisee who was entitled to an estate in fee? There being no means of compensation, it was not a case of election but a case of equitable title to specific performance on the ground of part performance and irreparable injury, if not consummated.

The acts of Mrs. Frisby which are supposed to be equivocal, are rendered consistent when viewed in this light. The joint deeds of mortgage of the 3rd September 1847, and 22nd April 1851, were recognitions by her of the reversionary interest of her son, in "Oxford" and lot No. 17, therein mortgaged. Under any other hypothesis, the son was made a party to a conveyance of property in which he had no interest at law or in equity, and the fee-simple depending upon her election, was in abeyance, to be determined by her election at some indefinite period. Can it be supposed Mrs. Frisby had the right to hold both properties during her life, and at the last moment, by her own act, or that of her creditors, renounce the will and reclaim her property?

When the character of an act is in question, that construction which is most consistent with the obligations of the actor, is to be preferred, and equity cannot adopt one

which would violate the moral and legal obligations of a daughter to her mother and her child, without extreme necessity. There is nothing in the premises, recitals or covenants of the grantors of the joint deeds above referred to, inconsistent with their rights as tenants for life and tenants in fee, respectively; the covenant for quiet enjoyment in behalf of the former, may be explained by its application to the other lands of Mrs. Frisby, but does not, if unexplained, amount to a renunciation of her mother's will.

The confirmatory leases dated 19th October 1857, and 6th May 1848, of Mrs. Frisby, are acts designed "solely for confirmation" (as one of them expressly declares) of previous deeds, made by Mrs. Edwards and Mrs. Frisby, and are not to be extended by implication, into independent acts of ownership, conflicting with previous acts of recognition. John J. Frisby was not a party to them and cannot be prejudiced by them.

"If a party has once made an election, he is bound to abide by his determination, unless he can restore the property to its original situation." *Leonard vs. Cromendin,* 1 *Edwds.,* 206, 210. 1 *Amer. L. Ca.,* 321.

Viewing the transaction as a compact or family settlement, it has all the requisites essential to its validity. It is reasonable, mutual, certain, fair and just, and based upon valuable and meritorious consideration. *Bowie vs. Stoddart,* 4 *Md. Ch. Dec.,* 475. 5 *Md. Rep.,* 18.

Mrs. Edwards was possessed of a large real (and personal) estate in fee, in her own right, as well as of a life estate in "Oxford" and lot No. 17, devised to her by her husband, with a reversion to Mrs. Frisby in fee. Mrs. Frisby had one son and several daughters. It was natural the grand-mother should desire to settle her mansion house or country seat, upon her only male descendant, and make liberal provision for him as the representative of the family. To accomplish this we may suppose, she had the understanding with her daughter as to the disposition of their property. In the words of the draughtsman, "the

will was written and dictated both by Mrs. Frisby and Mrs. Edwards, in the presence of each other, and after it was concluded Mrs. Edwards asked Mrs. Frisby, if the disposition of the property thus made by said will was satisfactory to her, and in accordance with their mutual understanding, or if not said she would make it so, to which the latter replied, that it was satisfactory and that she would carry out the said will; the will was then executed." In this instance the draughtsman might be regarded as the agent of both parties, legally authorised to reduce their agreement to writing, in the form of a will, which was a note or memorandum in writing of the subject matter of the contract.

The contract of settlement was binding between the parties from the time it became operative, which from the nature of the instrument chosen to accomplish it, was the death of Mrs. Edwards; the first that died carried her part of the contract into execution. *Dufour vs. Pereira*, 1 *Dick.*, 421. If the contract had been reduced to writing in any other form, it would have taken effect immediately. Had it been an ordinary contract of sale or exchange between the mother and daughter for the benefit of the son, for a similar consideration, no intermediate judgment against either would have been a lien on the land. *Hampson vs. Edelin*, 2 *G. & J.*, 64. *Repp vs. Repp*, 12 *G. & J.*, 341.

The complainants in this case are simple contract creditors of Mrs. Frisby, who seek to disturb the family arrangement, made long anterior to the claims; they do not charge any indebtedness on the part of the mother at the time of the settlement, or fraudulent intention in its inception or consummation. They rely upon the indebtedness of Mrs. Frisby at the time of making her will, in which she declares she had previously elected, as the legal obstacle to her making an election which would prejudice her creditors.

The agreement between Mrs. Edwards and Mrs. Frisby,

in my view, was for a *bona fide* and valuable consideration, and not subject to any exception under the Statute against fraudulent conveyances.

The case of *Johnson vs. Hubbell*, 2 *Stockton's Ch. Rep.*, is one of the most recent, apposite and exhaustive decisions on this subject. All the leading elementary principles and judicial precedents are collected and reviewed by the Chancellor, and after establishing the general principle of enforcing agreements to make family settlements by will, he proceeds: "It is said that this agreement was in parol, and is therefore contrary to the Statute of Frauds; but although this agreement was a mere parol one, if there was a part performance of it, of such a character, as upon the principles recognized and acted upon by this Court, will take a parol agreement out of the Statute, then there is nothing peculiar about an agreement of this kind, to exclude it from the operation of those principles." * * * * "Agreements or family arrangements like this are favoured in a Court of Equity; marriage settlements and agreements for family arrangements with respect to property are viewed with favor by this Court. They ought to be respected and scrupulously carried out by the parties to them, and if they are not, a Court of Equity ought to enforce their execution." pp. 338, 340.

Entertaining these views, I respectfully and reluctantly dissent from the opinion of the majority of my brothers sitting in this cause, affirming the decision below.

> *Order affirmed with costs,*
> *and cause remanded.*

(Decided May 22nd, 1863.)